[Civ. No. 26994. Fourth Dist., Div. One. Dec. 20, 1983.]

AGUSTIN PEREZ, Plaintiff and Appellant, v.
COMMISSION ON PROFESSIONAL COMPETENCE,
Defendant and Respondent;
SAN DIEGO UNIFIED SCHOOL DISTRICT,
Real Party in Interest and Respondent.

**COUNSEL**

Guthrie & Levens and Raphael Levens for Plaintiff and Appellant.

Ralph D. Stern and Ernestine Douglas Littlejohn for Defendant and Respondent.

Christina L. Dyer and Jose A. Gonzales for Real Party in Interest and Respondent.

OPINION

**BUTLER, J.**—Agustin Perez, a permanent certificated employee of the San Diego Unified School District (District), taught Spanish at Mira Mesa High School from 1976 until November 2, 1981, when he was dismissed for unprofessional conduct, incompetence and failure to follow District rules. His petition for a writ of mandate setting the dismissal aside was denied. He appeals contending improper notice of the charges, due process defects in application of standards of competency and the evidence does not support the findings of the court.

I

In early 1980, Perez began to lose control of his classroom and his students. Tardiness, inattention, siestas, talking in class, disdain for discipline, reading unrelated paperback books, general goofing off—all characterized his students and the classroom environment. In April, two students set a rug afire. Perez did nothing about it. A student asked him for a pass and reported the fire to the vice principal.

On May 7, 1980, Perez received a summary evaluation report from the District rating him unsatisfactory in all categories—achievement of stated objectives, maintenance of proper control, preservation of suitable environment and performance of other duties and responsibilities. The report noted Perez' failings: poor classroom control, disrespect shown to him by students, inadequate instruction, parental complaints students were not learning the "basics." The evaluators commented Perez denied the complaints were valid and refused any assistance to deal with his problem.

The "hang-loose" classroom environment did not change; the students decorated the walls and desks with graffiti and came and went at their pleasure. Perez continued to conduct his classes interchangeably in English and Spanish contrary to District requirements, and the Spanish instruction was marred by incorrect grammar, spelling, faulty translations and lessons below grade level of the students.

On January 9, 1981, another report rated Perez unsatisfactory in three areas, noted need for improvement in maintenance of classroom control and recommended a notice of incompetency and unprofessional conduct. On January 27, 1981, that notice issued to Perez advising he failed to achieve performance objectives, to maintain classroom control, to supervise, to maintain a suitable learning environment and appropriate relationship with students and parents.

Perez did not react to these reports. The students continued in control. On April 28, 1981, Perez again was evaluated and graded unsatisfactory on all counts. On May 12, the District superintendent filed charges against Perez seeking his dismissal, and an accusation to that effect was filed with the Board of Education May 23. The District's Commission on Professional Competence (Commission) heard the matter, and Perez was dismissed November 2, 1981.

## II

■ Perez concedes the District "paid lip service" to notice requirements, but contends he was not given opportunity to ascertain the charges or to correct his faults. Education Code section 44938[1] at times relevant here required Perez be given during the school term at least 90 days written notice of unprofessional conduct or incompetency with specific instances of behavior sufficient to enable him to correct his faults and overcome the grounds of the charged misconduct. On January 27, 1981, Perez was served with such written notice and with the evaluation reports.

Commencing in May 1980, the evaluations told Perez his work was unsatisfactory and described in detail his unsatisfactory performance. Specific recommendations were made for improvement. Counseling and assistance were offered. Perez failed to correct his faults or to improve his performance. The final written notice on January 27, 1981, was timely given and told Perez again in detail his work was unsatisfactory and suggested curative action. Again, he failed to take corrective action within the 90-day period. The charges were filed May 12 and the accusation May 23, both outside the 90-day period. Nothing more by way of the section 44938 notice was required. (*California Teachers Assn.* v. *Governing Board* (1983) 144 Cal.App.3d 27 [192 Cal.Rptr. 358].)

## III

■ Perez claims the District failed to establish standards against which his teaching performance must be evaluated and as to which his deficiencies were to be assessed. Without objection, the Commission received the foreign language section of the District's course of study for high schools setting out the basis for instruction in foreign languages. That document provides teaching guidelines and was available to Perez. Commencing in 1980, Perez received periodic evaluation reports with unsatisfactory ratings supported by specific instances and including recommendations for improvement. These periodic reports fulfilled the District's requirement to establish

---

[1] All statutory references are to the Education Code unless otherwise specified.

a system of evaluation and assessment of Perez' performance under section 44660 which in turn are necessary to fulfillment of notice requirements under section 44938. (*California Teachers Assn.* v. *Governing Board, supra,* 144 Cal.App.3d 27.) Perez was thus informed as to the standards expected of him, his failure to attain them and corrective action to be taken by him.

## IV

We examine the basis for dismissal for unprofessional conduct and incompetency. Section 44932, subdivision (a) permits dismissal of permanent employees for "immoral or unprofessional conduct." Section 44933 permits dismissal "on grounds of unprofessional conduct consisting of acts of omissions other than those specified in Section 44932, but any such charge shall specify instances of behavior deemed to constitute unprofessional conduct." Section 44932, subdivision (d) permits dismissal for "incompetency."

Here, the Commission found cause for Perez' dismissal for unprofessional conduct under both subdivisions (a) and (d) of section 44932 and for incompetency under section 44933. The Commission used the same facts and findings to support Perez' dismissal as to the two counts of unprofessional conduct and the single count of incompetency for consistent failure in each of the following respects:

1. To achieve performance objectives in teaching Spanish;

2. To maintain proper control of assigned students in that they talked during class, moved around the room and paid no attention to Perez;

3. To maintain a suitable learning environment characterized by inadequate progress of students in advanced classes, their inability to speak Spanish, inaccurate instruction, failure to plan class activities and to implement counseling and recommendations;

4. To perform other duties and responsibilities such as submitting lesson plans and failing to use teacher sign-in sheets. ■ The Commission finding of cause to dismiss for unprofessional conduct under section 44933 was based on the *same acts or omissions* specified for dismissal under section 44932, subdivision (a). As a section 44933 dismissal is supportable only on acts or omissions *other* than a section 44932, subdivision (a) dismissal, the Commission's findings and conclusions cannot support dismissal for unprofessional conduct under section 44933.

## V

We turn, then, to section 44932, subdivision (a) permitting dismissal for "immoral or unprofessional conduct." The phrase is not defined in the Education Code. While, as we have seen, the District promulgated a system of evaluation and assessment constituting standards for performance of Perez' teaching duties, the system did not set out in so many words the kind of conduct that would be considered by the District as comprising grounds for dismissal for "unprofessional conduct." That phrase appears for the first time in the January 9, 1981, evaluation report recommending issuance of a "Notice of Incompetency and Unprofessional Conduct" which was sent to Perez on January 21, 1981, triggering the 90-day period under section 44938.

*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], considered revocation of teaching credentials for "immoral or unprofessional conduct" and acts involving moral turpitude under former sections 13202 and 13129 (now §§ 44421 and 44437). The teacher involved had engaged in homosexual activities for a period of one week, resigned his teaching position a year later and his credentials were revoked five years after his resignation. The court held the term "immoral or unprofessional conduct" authorizes disciplinary action only for conduct indicating unfitness to teach. "We therefore conclude that the Board of Education cannot abstractly characterize the conduct in this case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of section 13202 of the Education Code unless that conduct indicates that the petitioner is unfit to teach. In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the board in determining whether the teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards." [Fns. omitted.] (*Id.,* at pp. 229-230.)

*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691 [139 Cal.Rptr. 700, 566 P.2d 602] construed the phrase "immoral or unprofessional conduct"

in former section 13403, subdivision (a) (now § 44932, subd. (a)) as constituting "fitness to teach." There, the court affirmed a trial court determination a single instance of lewd conduct by a teacher whose career had been exemplary did not demonstrate unfitness to teach and noted decisions following *Morrison* have construed "immoral or unprofessional conduct" as used in then section 13403, subdivision (a) (now § 44932, subd. (a)) to mean only such conduct as indicates unfitness to teach.

The decisions requiring unfitness to teach as the measure of unprofessional conduct involved incidents of extracurricular sexual or criminal activity or use of sexually explicit teaching materials.[2]

 Here, the Commission found continuing unsatisfactory teacher performance in the classroom coupled with an inability or unwillingness to conform to required standards. *Morrison* holds civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited and to provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies. The fitness to teach standard as a measure of unprofessional conduct makes specific the kind of conduct required of teachers in this regard. So construed, the term "unprofessional conduct" is not vague, and a teacher's dismissal for that reason is not a denial of due process. (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 230-231.)

We conclude unsatisfactory teacher performance said to be unprofessional conduct should be measured by the standard of fitness to teach. Absent this objective measure of performance, the livelihood of the teacher is dependent upon an abstract characterization of conduct which will shift and change from board to board, district by district and year by year. Such discretion is required to be bridled by the restraints of the standard of fitness to teach.

We hold the phrase "unprofessional conduct" as used in section 44932, subdivision (a) is conduct such as to indicate unfitness to teach. The record on appeal does not include any findings by the Commission or the court to the effect Perez is unfit to teach and the transcript of the Commission hearings does not include evidence of the factors enumerated in *Morrison.* Thus, dismissal under section 44932, subdivision (a) is not supported by the evidence.

---

[2](*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214; *Board of Education* v. *Jack M., supra,* 19 Cal.3d 691, 697; *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 103-104 [100 Cal.Rptr. 73, 47 A.L.R.3d 742]; *Oakland Unified Sch. Dist.* v. *Olicker* (1972) 25 Cal.App.3d 1098, 1106-1108 [102 Cal.Rptr. 421]; *Board of Trustees* v. *Metzger* (1972) 8 Cal.3d 206 [104 Cal.Rptr. 452, 501 P.2d 1172]; *Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 826 [94 Cal.Rptr. 318].)

## VI

Having concluded dismissal for unprofessional conduct cannot stand, we turn to the remaining charge of dismissal for incompetence. ■ A particular act or omission on the part of a teacher may constitute more than one of the causes for his removal under section 44932. (*Tarquin v. Commission on Professional Competence* (1978) 84 Cal.App.3d 251 [148 Cal.Rptr. 522].) It follows the same acts or omissions may constitute grounds for removal for incompetence or unprofessional conduct.

■ While causes for dismissal such as moral turpitude, unprofessional conduct and evident unfitness to teach are to be construed against the *Morrison* standard of fitness to teach, incompetency supported by specific acts is a basis for dismissal. *California Teachers Assn.* v. *Governing Board, supra,* 144 Cal.App.3d 27, 36 affirmed a judgment denying a writ to set aside the dismissal of a teacher for incompetency under section 44932, subdivision (d). There, classroom discipline problems included students fighting, playing soccer in the classroom, yelling over the school intercom and the back door, throwing pencils, using vulgar language, disregard of instructions, requests for transfer and general disorder. Noting the lack of adopted guidelines for assessing teacher incompetency, the court held *Morrison* factors were not relevant in an incompetency dismissal. "To illustrate the importance of the objective standards, our attention is directed to *San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278 [185 Cal.Rptr. 203]. We do not find that case material to the resolution of the issue of whether failure to adopt guidelines for assessing teacher incompetency precluded compliance with section 44938 in this case. *San Dieguito* and the cases cited therein uniformly involve causes for dismissal other than incompetency—such as excessive absences, sex offenses, or drug violations. The danger in such situations (where the offense purporting to justify dismissal involves questions of moral turpitude or unfitness to teach) that a lack of objective standards will vest unbridled discretion in the districts and trial courts, is not present where incompetence is alleged and is, as in this case, supported by allegations of specific conduct." (*California Teachers Assn.* v. *Governing Board, supra,* 144 Cal.App.3d at p. 36.) Incompetency as a basis for dismissal does not invoke the vagueness and uncertainty of the phrases—moral turpitude, immorality or unprofessional conduct. It is a plain word and means not competent. (The American Heritage Dict. of the English Language (1981) p. 666.) Competent, in turn, means properly or well qualified; capable—adequate for the purpose, suitable; sufficient. (*Id.,* at p. 271.) Incompetency does not invoke subjective analysis of standards of morality or professionalism which vary from individual to individual dependent on time, circumstances or custom. While empirical standards to measure teacher compe-

tence are not in the record before us, we have little doubt the teacher members of the Commission have the professional experience and skill meaningfully to assess teacher competence. *(California Teachers Assn.* v. *Governing Board, supra,* 144 Cal.App.3d 27, 34.) Importantly, the concept of incompetency is not so arcane as to suggest a court is incapable of reviewing the record of administrative proceedings to determine if substantial evidence supports the agency conclusion. We hold incompetency to be its own standard and consider Perez' last contention his dismissal for incompetence is not supported by the record.

## VII

██ On review of Commission action, the trial court exercises its independent judgment on the evidence presented to the Commission. *(Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].) ██ The trial court's judgment must be upheld on appeal if supported by substantial evidence. All conflicts are resolved in favor of the prevailing party who is entitled to the benefit of every reasonable inference to support the judgment. *(San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 283 [185 Cal.Rptr. 203].) ██ Where the trial court's findings are challenged, based on insufficiency of the evidence, Perez bears the heavy burden of showing that there is no substantial evidence to support those findings. *(Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 829 [152 Cal.Rptr. 98].) ██ We start with the presumption that the record contains evidence to sustain every finding of fact. *(Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Our inquiry begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. *(Ibid.)*

██ Applying these rules to the record before us, we conclude sufficient evidence supports the judgment denying the writ and we affirm Perez' dismissal for incompetency.

Brown (Gerald), P. J., and Work, J., concurred.